Good morning, Your Honors. My name is Tom Christo. I represent the plaintiff and appellant Honeywell. I plan to make my remarks brief and reserved with the leave of this Court for the majority of my time for any rebuttal that might be needed. This is an appeal. Let me ask you one question. Honeywell was compensated for its losses in the other case. Is that right? No. No. What did the Ninth Circuit do? I thought it sent it back and said, you know, you might even be able to get some more when you go back. That's what I'm after. What happened? What the Ninth Circuit did is affirm and part and remand on the issue of equitable relief. And that should have been my question. What happened on that remand? On the has referred the parties over to mediation and is holding it in abeyance. What the Ninth Circuit panel did was, in that opinion, Your Honor, is state it had no power to order an increase but invited the trial judge to consider an increase. So that's from 50 percent of the savings to 100 percent of the savings. So that's in play right now in mediation? It's in play about to start mediation. Uh, and obviously in that mediation process, dependency of this case will also be, you know, thrown into the mix. Uh, but the important point to note there is that it is by no means settled that Judge Henderson will order 100 percent of the savings. Okay. And the savings in any event is not in any event, I guess your argument here is that Cook County versus Chandler changes everything. He sure does. And requires what? Well, it requires a remand. Judge Henderson's opinion on 12B6 opinion relied on Stevens and a reading of Stevens, which held that the false claims act was punitive in nature, didn't apply to municipalities. Henderson squarely addresses that and say, not true. Why a remand? Because his 12B6 opinion was wrong. That's requiring us to go forward with the case. Why not a reversal? Well, a reversal of his decision, but it's at a 12B6 stage. And you're going to talk about a remand maybe on the 11th amendment issue, which is separate from the... Uh, well, the 11th amendment issue is separate. I can not, as we said on brief, a 12B6 issue really, but I can address that. They lost that same issue in Lynch. The same argument. Oh, exactly. And, and of course, the Mitchell test, as we, as we point out in our, our reply brief, uh, clearly indicates... All those arguments, then what would you say? We would say that this case should go forward to trial if we're not successful in mediation, obviously. Uh, and, and that's where, that's where we lie. What about, um, I'm sorry, go ahead. Could success in mediation render this moot, irrelevant? Well, of course, your honor, to the extent the parties, uh, successfully mediate, uh, and to the extent the U.S. attorney agrees, because as your honor knows, the U.S. attorney has to agree with any, the terms of any settlement, uh, on this aspect of the case, uh, then it would moot it. Uh, I will tell your honor that we've been at it for many years and many mediations have gone down the pike. So I'm not altogether, uh, hopeful. So is this lawsuit against HUD for cheating HUD? No, your honor. Uh, HUD... Wasn't HUD running the housing authority at the time? Well, HUD designee was, but as the evidence in the, in the companion case pointed out, once that person became the HUD designee at the housing authority, he stood in the position of the housing authority and a Chinese law was set up between him and HUD. He did not have any interaction with HUD except at an arm's length basis. And, and the assets that we're talking about, that would be the subject of this false claims act, would flow from the housing authority, a separate entity, to HUD. So it's, there's not an identity of parties here. I'm not trying to interfere with your argument, but is there anything else you want to say or do you want to respond? That was essentially it. I was going to, I was going to reserve, uh, for any rebuttal. Minutes. I just had one, I have one question on, um, why shouldn't there be a waiver on the individual defendants? You didn't mention it in your opening brief. And then when, then in your respond, in your reply brief, you basically still didn't say what you could prove against those individuals. So, um, why shouldn't, uh, we just say you waive that? Uh, because in the reply brief, what we indicated was the only reason the individual defendants went by the wayside was Judge Henderson's 12B6 decision, uh, relying on Stevens, which is now mooted by Chandler. Uh, and they're very much still in the picture. Uh, there was no issue, uh, to my recollection, either on motion, uh, or in the decision or in the appeal or, or, or reply to the repeal that addressed the merits of the, uh, individual defendants. Uh, so there was nothing to brief, but if Your Honor wants argument on that, I'll be happy to, to give it to you. Well, no, but I mean, I don't think individuals like being left in lawsuits when you can't even get, I mean, you can't bring it up in your opening brief. I mean, that's, There was, there was no, People are waking up at three o'clock in the morning. I mean, the, you know, Oh, I'll be happy to address Your Honor. But the reason we don't bring it up is that Judge Henderson's opinion didn't address it. So there was no way we could bring it up, you know, ethereally. He didn't say anything about the  Seeing how that makes a new rule, rule of appellate practice, why you don't have to address it in your briefing. Well, we addressed the reason he reversed the reason he dismissed the case, the whole case, which included them. And he didn't, he didn't give any other reason for the individuals. That's why we didn't raise it. But the fact of the matter is Your Honor, uh, these individuals who signed the annual certification signed right under a legend that says this is subject to the 21 U.S.C. 3729. It couldn't be clearer that they're individually liable for their false certification were it false. And remember, this is a 12B6 decision, not a summary judgment decision. Thank you, Your Honor. Thank you, counsel. Good morning. May it please the court. I'm Eric DeWald, and I'm here representing the defendant's San Francisco Housing Authority. I think the court has alluded to the point that I came here to make, which is that we see this as simply a case in which HUD appointed what was known as a HUD recovery team. They took over the San Francisco Housing Authority. The Housing Authority relinquished control of the agency to the HUD recovery team. If you look at this complaint, they allege, and we do not disagree, that the Housing Authority was taken over by HUD in March of 1996, and HUD did not give control back to the Housing Authority until 1997. Every allegation of a false representation made to HUD, supposedly, never mind the fact that a trial court has already decided that there was a contract, and that this court has also affirmed that, put that aside. The point is that every allegation of a misrepresentation was made by somebody who was appointed by HUD, and the San Francisco Housing Authority was not in control of the agency. What does that necessarily mean, though? I've been unable to find any case that's similar to this. Well, if you look at, I understand, and I've tried to find cases too, but I did find the case U.S. v. Bornstein, which is at 423 U.S. 303 and 312, in which the court says specifically, the False Claims Act penalizes a person for his own acts and not the acts of someone else. Well, it seems like that's something for a trial to decide, whether these people were, you know, was it HUD misrepresenting HUD, or was it the San Francisco Housing, you know, was this person acting as San Francisco Housing Authority, or whatever. But it seems like that's something that a trial would decide, not something on a 12B motion. Well, we certainly raised it with the court in the motion, and the court considered the argument. We've placed the argument in our brief. My belief is that in a situation like this, where the housing authority itself is not in control, where the people who were running the housing authority gave control back to HUD, and HUD appoints, in effect, a receiver for an agency. As Judge Callahan suggests, you very well may end up having a good argument on that. But the other side seems to say, yes, but. There was a Chinese wall, and in fact, although it was a HUD recovery team, the way it works is that they're still independent, and HUD is still different. And there's no way we can really grapple with that. And that's primarily the kind of thing that a trial court is best at sorting out. Isn't that the case? Well, I think under these circumstances, that may be true. I just wanted to come in and make that point, because we don't argue that the Supreme Court in the Cook County case has decided this issue about local public entities being subject to the False Claims Act. I just wanted to point out that it just doesn't seem fair to utilize an agency for what a HUD appointed official does while it's running the agency. And we went around and around over this very issue in my chambers, and kind of concluded tentatively, of course, there are three of us that have to decide, that it might be best fleshed out in the trial court, at least, so we can see exactly what we're dealing with. I mean, both sides have arguments, and it's hard for us as an appellate court to make a decision on those. Well, in any event, we take your argument at face value. We'll do with it what we think is appropriate. What else would you like to tell us? I think it's submitted. Submitted? Okay. Thank you. And do you have anything else to say, Counsel? No, Your Honor, unless you have questions for me, of course. No, I guess we don't. Thank you very much. Thank you, Your Honor. You know, when counsel argue right to the point and save time like this, there should be a way in which we could reward both counsel. Ha ha ha ha ha ha ha ha ha ha ha! Having us off the hot seat soon is reward enough. Thank you, Your Honor. Both for your fine argument. We wish you all the best with mediation. Thank you both. Thank you. Thank you very much. Do you want to take a break? I'll take a break.  I don't care. Shall we go ahead? All right, we'll go ahead. We'll call the last case on the calendar. We're making good progress. United States v. Melcher, Zaragoza, and Ignacio Garcia-Rebollar. Very good. Very good. Very good. Very good.
judges: Thompson, Trott, Callahan